Lola Padgett and Michael Dunn v. City of Madisonville
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-199-CV

Â Â Â Â Â LOLA PADGETT
Â Â Â Â Â AND MICHAEL DUNN,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â CITY OF MADISONVILLE, TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 278th District Court
Madison County, Texas
Trial Court # 01-95910278-10
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Lola Padgett rented a home that became damaged when sewage from the city-owned sewer
line back-flowed into the residence. Padgett and the propertyâs owner, Michael Dunn, sued
the City of Madisonville for nuisance, nuisance-per-se, and inverse condemnation. The City
filed a de facto plea to the jurisdiction based on governmental immunity, which the trial court
granted.
Â Â Â Â Â Â Padgett and Dunn contend in two issues that the trial court erred in granting the Cityâs
plea to the jurisdiction, or, in the alternative, prematurely granted the plea. We reverse in
part, affirm in part, and remand to the trial court for further proceedings.
Inverse Condemnation and Nuisance Claims
Â Â Â Â Â Â What actually caused the backup in the sewage line, whether the City knew of the
problems, whether it intentionally or negligently failed to correct the cause of the backup, and
whether the condition rose to the level of a nuisance or an unconstitutional taking are not
known. Based on the current state of the law in this district, we hold that the trial court erred
in granting the Cityâs plea to the jurisdiction regarding the inverse condemnation and nuisance
claims. See Cozby v. City of Waco, 110 S.W.3d 32 (Tex. App.âWaco 2002, no pet.); Bible
Baptist Church v. City of Cleburne, 848 S.W.2d 826 (Tex. App.âWaco 1993, writ denied).
We recognize that an inverse condemnation case on these issues, which could modify our
analysis, is currently pending review by the Texas Supreme Court. See Sabine River Authority
of Texas v. Hughes, 92 S.W.3d 640 (Tex. App.âBeaumont 2002, pet. granted). But on the
precedent currently binding on this court, Padgett and Dunnâs first issue is sustained, in part.
Nuisance-per-se
Â Â Â Â Â Â Padgett and Dunn also allege a nuisance-per-se cause of action against the City based on
section 341.011 of the Health and Safety Code. That section provides that â[e]ach of the
following is a public health nuisance: (5) sewage, human excreta, wastewater, garbage, or
other organic wastes deposited, stored, discharged, or exposed in such a way as to be a
potential instrument or medium in disease transmission to a person or between persons. . . .â 
Tex. Health & Safety Code Ann. Â§ 341.011 (5) (Vernon 2001).
Â Â Â Â Â Â While we agree that the sewage was discharged in such a way as to violate the statute, we
disagree that the City can be held liable for a nuisance per se based upon a violation of the
statute alone. âThe acts of the government are not nuisances per se.â City of Addison v.
Dallas Indep. Sch. Dist., 632 S.W.2d 771, 773 (Tex. App.âDallas 1982, writ refâd n.r.e.). 
Further, the parties point out no language in the statute, nor did we find any, that indicates a
âclear and unambiguousâ waiver of immunity in the statute. See Gen. Servs. Commn. v.
Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 594 (Tex. 2001). Padgett and Dunn alleged
facts in their petition that affirmatively negate the existence of jurisdiction with regard to their
nuisance-per-se claim against the City. See County of Cameron v. Brown, 80 S.W.3d 549, 555
(Tex. 2002); Cozby, 110 S.W.3d at 36. Thus, the trial court did not err in granting the Cityâs
plea to the jurisdiction on that claim. Issue one is overruled, in part.
Â Â Â Â Â Â Because of our disposition of issue one, we need not consider issue two. 
Conclusion
Â Â Â Â Â Â Â The trial court erred in granting the plea to the jurisdiction regarding Padgettâs and
Dunnâs inverse condemnation and nuisance claims; therefore, we reverse that part of the trial
courtâs judgment and remand for further proceedings. The trial court did not err in granting
the plea to the jurisdiction regarding the nuisance-per-se claim; therefore, we affirm that part
of the trial courtâs judgment.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Gray,
Â Â Â Â Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Â Â Â Â Justice Reyna



(Justice Vance concurring)
Affirmed in part, reversed and remanded in part
Opinion delivered and filed February 11, 2004
[CV06]



 We review a trial courts
ruling on a motion to suppress evidence in a juvenile proceeding under a
bifurcated standard of review.Â  See In re R.J.H., 79 S.W.3d 1, 6-7 (Tex.
2002); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).Â 
We give almost total deference to the trial courtÂs rulings on questions of
historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor.Â  Johnson v. State, 68 S.W.3d
644, 652-53 (Tex. Crim. App. 2002); Best v. State, 118 S.W.3d 857,
861-62 (Tex. App.ÂFort Worth 2003, no pet.).Â  However, we review de novo
a trial courtÂs rulings on application-of-law-to-fact questions that do not
turn on the credibility and demeanor of witnesses.Â  Johnson, 68 S.W.3d
at 652-53.

DISCUSSION

M.G. contends that the trial court erred
in overruling his motion to suppress his videotaped statements because the
statements were the result of custodial interrogation, yet he had not been
advised of his rights, which violated the Fifth and Fourteenth Amendments to
the United States Constitution; Article 1, Sections 9 and 10 of the Texas
Constitution; and section 51.095 of the Texas Family Code.Â  In response, the
State acknowledges that M.G. was not given the statutory warnings required by
Texas Family Code section 51.095 but contends that the statements were
nevertheless admissible because they did not arise from custodial
interrogation.Â  See Tex. Fam.
Code Ann. Â§ 51.095(b)(1), (d) (Vernon 2009).Â  Alternatively, the State
argues that any error in admitting M.G.Âs videotaped statements before the jury
was harmless.

Custodial
Interrogation

Â Â Â Â Â Â Â Â Â Â Â  Â ÂCustodial interrogationÂ
means Âquestioning initiated by law enforcement officers after a person has
been taken into custody or otherwise deprived of his freedom of action in any
significant way.ÂÂ  Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602,
1612, 16 L.Ed.2d 694 (1966).Â  In cases involving adults, Â[a] person is in
ÂcustodyÂ only if, under the circumstances, a reasonable person would believe
that his freedom of movement was restrained to the degree associated with a
formal arrest.ÂÂ  Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996) (citing Stansbury v. California, 511 U.S. 318, 322-25, 114 S.Ct.
1528, 1528-30, 128 L.Ed.2d 293, 298-99 (1994)).Â  When the person involved is a
minor, the courtÂs inquiry is whether, based on the objective circumstances, a
reasonable child of the same age would believe his freedom of movement was
significantly restricted.Â  In re D.A.R., 73 S.W.3d 505, 510 (Tex.
App.ÂEl Paso 2002, no pet.); In re L.M., 993 S.W.2d 276, 289 (Tex. App.ÂAustin
1999, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  The Court of Criminal
Appeals has recognized four factors relevant to determining custody:Â  (1)
probable cause to arrest, (2) subjective intent of the police, (3) focus of the
investigation, and (4) subjective belief of the defendant.Â  Dowthitt,
931 S.W.2d at 254.Â  However, Âfactors two and four have become irrelevant
except to the extent that they may be manifested in the words or actions of law
enforcement officials; the custody determination is based entirely upon
objective circumstances.ÂÂ  Id.

Station-house questioning does not, in
and of itself, constitute custody.Â  Id. at 255.Â  The following four
general situations may constitute custody:Â  (1) when the suspect is physically
deprived of his freedom of action in any significant way, (2) when a law
enforcement officer tells the suspect that he cannot leave, (3) when law
enforcement officers create a situation that would lead a reasonable person to believe
that his freedom of movement has been significantly restricted, and (4) when
there is probable cause to arrest and law enforcement officers do not tell the
suspect that he is free to leave.Â  Id.Â  Concerning the first three
situations, the restriction on freedom of movement must amount to the degree
associated with an arrest as opposed to an investigative detention.Â  Id.Â 
Concerning the fourth situation, the officersÂ knowledge of probable cause must
be manifested to the suspect.Â  Id.Â  Such manifestation could occur if
information substantiating probable cause is related by the officers to the
suspect or by the suspect to the officers.Â  Id.Â  Custody is thus established
in the fourth situation if the manifestation of probable cause, combined with
other circumstances, would lead a reasonable person to believe that he is under
restraint to the degree associated with an arrest.Â  Id.

When the circumstances show that the
individual acts upon the invitation or request of the police and there are no
threats, express or implied, that he will be forcibly taken, then that person
is not in custody at that time.Â  Dancy v. State, 728 S.W.2d 772, 778-79
(Tex. Crim. App. 1987); In re M.R.R., 2 S.W.3d 319, 324 (Tex. App.ÂSan
Antonio 1999, no pet.).Â  However, the mere fact that an interrogation begins as
non-custodial does not prevent it from later becoming custodial; police conduct
during the encounter may cause a consensual inquiry to escalate into custodial
interrogation.Â  Dowthitt, 931 S.W.2d at 255.

Â Â Â Â Â Â Â Â Â Â Â  Detective Caldwell had asked
M.G.Âs mother, who is also the mother of the alleged victim, if she would mind
bringing M.G. to ScottyÂs House and then from ScottyÂs House to the police
department. Â But Detective Caldwell never directly asked M.G. whether he was
willing to talk to her until he was already at the police department.Â  At that
time, M.G. had just finished being interviewed at ScottyÂs House.Â  Furthermore,
once M.G. was at the police department and agreed to talk to Detective Caldwell,
at Detective CaldwellÂs suggestion, he was isolated from his mother and then led
through the detectivesÂ area to an interview room, where he sat alone with Caldwell.Â 
The room was small.Â  Detective Caldwell sat very close to M.G. while
questioning him and appeared to be, at least in part, between M.G. and the
door.Â  Detective Caldwell never informed him of any of his rights under the
Texas Family Code, and she was not sure if she told him that he was free to
leave.Â  Instead, Detective Caldwell made it clear that M.G. was the focus of the
investigation involving the sexual assault of his brother.Â  Despite M.G.Âs
denials, Detective Caldwell repeatedly asked M.G. if he had sexually assaulted
his brother.Â  At some point, M.G. became teary-eyed.Â  Nevertheless, Detective
Caldwell continued to press him for truthful statements, telling him that she
knew that he was not being completely honest during the ScottyÂs House
interview.Â  She also stressed to him several times that they had found a shirt
in his bedroom with potential DNA evidence on it and brought his mother into
the interview room, not for M.G.Âs benefit, but only to allow Detective
Caldwell to take DNA cheek swabs from him.Â  After all this, M.G. finally gave a
statement inculpating himself in the sexual assault.

Based on the circumstances outlined
above, we conclude that a reasonable eleven-year-old child would have believed that
his freedom of movement had been significantly restricted at some point after
Detective Caldwell began to press M.G. for a truthful statement.Â  See
Jeffley v. State, 38 S.W.3d 847, 856-58 (Tex. App.ÂHouston [14th Dist.]
2001, pet. refÂd) (consensual non-custodial questioning of fifteen-year-old who
had willingly accompanied detective to the police station escalated into
custodial interrogation after police officer began pressing her for truthful
statement; the eighth-grader sat alone, without parent or lawyer present or
accessible, in police station with police officer who never informed her she
was free to leave, never informed her of her rights under Family Code, and
never made arrangements for her to return home, as promised); L.M., 993
S.W.2d at 290-91 (eleven-year-old was in custody when she made her statements
even though she was informed at beginning of interview of her right to remain
silent, right to attorney, and right to terminate interview; interview was
conducted in childrenÂs shelter where she was temporarily staying, she was not
told she was free to leave interview room or childrenÂs shelter, she was
isolated and alone during interrogation, and she was focus of investigation).




Harm

Â Â Â Â Â Â Â Â Â Â Â  We consider next whether the
trial courtÂs error was harmful under Texas Rule of Appellate Procedure 44.2,
which governs error in criminal cases.Â  See Tex. R. App. P. 44.2.Â  Under Rule 44.2, the nature of the
error controls the standard under which it will be evaluated.Â  See id.; Jeffley,
38 S.W.3d at 858.Â  Constitutional error requires reversal of a judgment of
conviction or punishment unless the reviewing court determines beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment.Â  Tex. R. App. P. 44.2(a).Â 
If the error is non-constitutional, it must be disregarded unless it affects
substantial rights.Â  Tex. R. App. P. 44.2(b).Â 
The improper admission of a statement in response to custodial interrogation
implicates the constitutional right against self-incrimination; therefore, we
employ the harm analysis mandated by Rule 44.2(a).Â  D.A.R., 73 S.W.3d at
513; Jeffley, 38 S.W.3d at 858; see Tex. R. App. P. 44.2(a).

Â Â Â Â Â Â Â Â Â Â Â  The State argues that any error
in admitting M.G.Âs videotaped statements before the jury was harmless because
the jury had already heard M.G.Âs mother testify, without objection, that M.G.
admitted to her that he had assaulted his brother J.G.Â  However, M.G.Âs mother
also testified that, on several separate occasions, J.G. said that ÂDaddyÂ had
touched him inappropriately.Â  Although she explained this by stating that M.G.
told her that he would tell J.G. that he was ÂDaddy,Â Rogelio testified that
J.G. called him ÂDaddyÂ and that he had been alone with J.G. for approximately
one hour every weekday afternoon.Â  M.G.Âs mother also testified that Rogelio
continued to live in the house even after J.G. first accused him. Â Moreover,
during its closing argument, the State emphasized M.G.Âs videotaped
confession.Â  Thus, we cannot conclude beyond a reasonable doubt that the error
did not contribute to M.G.Âs conviction.

Â Â Â Â Â Â Â Â Â Â Â  We sustain M.G.Âs sole
point.

CONCLUSION

Â Â Â Â Â Â Â Â Â Â Â  We reverse the judgment of
the trial court and remand for further proceedings.

Â 

REX D. DAVIS

Justice

Â 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Reversed
and remanded

Opinion
delivered and filed August 11, 2010

[CV06]









[1]
Detective Caldwell testified at trial that ScottyÂs House is the local child
advocacy center where child victims are interviewed.





[2]
M.G.Âs mother testified at trial that Rogelio was her live-in boyfriend during
that time.