United States Court of Appeals,

Fifth Circuit.

No. 95-30964.

Claudious W. CHANNER, Petitioner-Appellant,

v.

Keith HALL, Warden;  Gail Haynes;  Bill Strunk;  Ron Justice;
Immigration and Naturalization Service;  Ms. Smith Food Services;
Janet Reno;  and Nancy L. Hooks, Respondents-Appellees.

May 14, 1997.

Appeal from the United States District Court for the Western
District of Louisiana.

Before KING and HIGGINBOTHAM, Circuit Judges, and KAZEN,[1] District
Judge.

KAZEN, District Judge:

## Background

Claudious W. Channer ("Channer"), a *pro se* appellant, was
scheduled to complete a federal prison sentence at the Federal
Correctional Institution at Oakdale, Louisiana ("Oakdale"), on
March 2, 1994.  At his request, the Bureau of Prisons recalculated
his release date to January 29, 1994, to reflect jail-time credits.
Channer was released into INS custody on January 31, 1994 pursuant
to an Immigration and Naturalization Service ("INS") detainer.  He
was classified as an aggravated felon and held at Oakdale in "no
bond" status.  Channer conceded his deportability and sought to be
deported prior to March 2, 1994, the date on which he had
originally been scheduled to complete his federal sentence.  He

---

[1]District Judge of the Southern District of Texas, sitting by
designation.

waived his right of appeal and received a final order of deportation on March 2, 1994. On March 23, 1994, however, before Channer could be deported, Connecticut officials executed a detainer against him and took him into their custody to serve a twenty-year state sentence for armed robbery. During Channer's detention at Oakdale, both as a federal prisoner and as an INS detainee, he worked in the Food Services Department from 4:30 a.m. to 12:30 p.m. each day.

Channer brought an action in the Western District of Louisiana, Lake Charles Division, against Keith Hall, the warden at Oakdale during Channer's detention, and other federal officials and employees ("Appellees"). In an amended complaint filed in March 1994 and in later filings, Channer alleged that Appellees failed expeditiously to deport him as allegedly required by the former 8 U.S.C. § 1252. He also alleged that the Appellees reduced him to involuntary servitude in violation of the Thirteenth Amendment to the U.S. Constitution by compelling him to work in the Food Services Department while he was an INS detainee. He sought injunctive and monetary relief.

Appellees filed a motion to dismiss or, in the alternative, for summary judgment in which they raised the defense of qualified immunity. After the magistrate judge issued his report and recommendations, Channer filed a motion to compel discovery on the Thirteenth Amendment issue. Appellees filed no summary judgment evidence. In separate orders, the district court granted their motion for summary judgment on all causes of action. The court did

not rule on the motion to compel discovery.

Channer raises four issues on appeal, only two of which merit any discussion. First, he appeals the district court's order dismissing his claim for damages arising out of the INS's failure expeditiously to deport him pursuant to a since-repealed version of 8 U.S.C. § 1252.[2] Second, he appeals the order granting summary judgment in favor of Appellees on his Thirteenth Amendment claim for damages. Appellees again raise the qualified immunity defense, which the magistrate judge and district court did not reach. We affirm.

## INS's Failure to Deport

While this appeal was pending, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), §§ 305-306, Pub.L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), was enacted. This statute repealed 8 U.S.C. § 1252. The new provision which governs the detention and removal of aliens ordered removed, 8 U.S.C.A. § 1231(h) (Supp.1997), provides that "[n]othing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." The effective date of this provision was April 1, 1997. IIRIRA, § 309(a). Because, as discussed below, Channer fails to state a

---

[2]As the magistrate judge observed in his report and recommendations, it appears that Channer's desire to have his deportation expedited was fueled, at least in part, by his desire to avoid serving his twenty-year Connecticut sentence. Connecticut officials apparently were unaware that his sentence had been recalculated to reflect jail-time credits.

claim under the repealed version of § 1252, we need not reach the issue of whether the 1996 amendments to the Immigration and Nationality Act ("INA") apply retroactively to his case.

Channer brings claims under the former 8 U.S.C. § 1252(c) and § 1252(i).  The INA formerly provided that an alien who was not deported within six months of receiving a final order of deportation was to be released subject to supervision.  8 U.S.C. § 1252(c) (1994) (repealed 1996).  The former 8 U.S.C. § 1252(i) provided that "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction."  8 U.S.C. § 1252(i) (1994) (repealed 1996).

The INA also provided, however, that "[a]n alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement."  8 U.S.C. § 1252(h) (1994) (repealed 1996).  When Channer was released to INS custody after completing his federal prison sentence, he had not yet begun to serve his Connecticut prison sentence for armed robbery.  While no court appears to have addressed factual circumstances similar to Channer's case, we conclude that, had the INS "expeditiously" deported him before he began serving his Connecticut sentence, it would have violated § 1252(h).

Moreover, Channer has no implied private cause of action for damages for the INS's failure to expedite his deportation.  In a similar case, we held that an alien lacks standing under the

4

Mandamus and Venue Act ("Mandamus Act"), 28 U.S.C. § 1361, or the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-706, to compel the INS to commence deportation proceedings pursuant to section 1252(i). *Giddings v. Chandler,* 979 F.2d 1104, 1110 (5th Cir.1992). As stated in *Giddings,*

> while § 1252(i) imposes a duty on the Attorney General to begin proceedings once an alien is deemed deportable because of a conviction, that statute also grants the Attorney General discretion to proceed "as expeditiously as possible." ... We read § 1252(i) as imposing a duty on the Attorney General to deport criminal aliens, but we stop short of concluding that this creates a duty *owed to the alien.*

*Giddings,* 979 F.2d at 1109-10 (quoting 8 U.S.C. § 1252(i)). Neither the language nor the legislative history of this section suggests that Congress intended to create a private right of action for aliens, and no circuit has recognized a private right of action under section 1252(i). *See, e.g., Urbina-Mauricio v. INS,* 989 F.2d 1085, 1088 (9th Cir.1993). We decline to recognize such a right. Dismissal of Channer's INA claim was proper.

Thirteenth Amendment

A. Standard of Review

We review the granting of summary judgment *de novo,* examining the evidence in the light most favorable to the nonmovant. The moving party will prevail if he has demonstrated that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Hale v. Townley,* 45 F.3d 914, 917 (5th Cir.1995). Furthermore, we must decide whether Channer has stated a claim for a violation of a constitutional right before reaching the issue of qualified immunity. *Doe v. Rains County Indep. Sch.*

5

*Dist.,* 66 F.3d 1402, 1404 (5th Cir.1995).[3]

### B. Analysis

The Thirteenth Amendment states:

Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Section 2. Congress shall have power to enforce this article by appropriate legislation.

Channer alleges that, by forcing him to work from 4:30 a.m. to 12:30 p.m. every day in Oakdale's Food Services Department, Appellees subjected him to involuntary servitude[4] in contravention of the Thirteenth Amendment's first section.[5] We will assume,

---

[3]Channer also appeals the dismissal of his claim under the 13th Amendment for damages against the INS. No *Bivens* remedy is available against a federal agency, *FDIC v. Meyer,* 510 U.S. 471, 482-86, 114 S.Ct. 996, 1004-06, 127 L.Ed.2d 308 (1994), and there is no indication that Channer pursued a Federal Tort Claims Act claim.

[4]The Amendment's exception, which permits involuntary servitude as punishment for a crime for which the party has been duly convicted, would be inapplicable after Channer completed his criminal sentence and became an INS detainee. While it is not clear from the record that all of Channer's evidence on involuntary servitude relates to his period of INS detention, Appellees do not address this issue. For summary judgment purposes, therefore, we treat this evidence as relating to the period in which he was detained by the INS.

[5]Section two "clothe[s] "Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States.' " *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 439, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968) (quoting *The Civil Rights Cases,* 109 U.S. 3, 20, 3 S.Ct. 18, 27-28, 27 L.Ed. 835 (1883)) (emphasis omitted). Appellees contend that there is no direct private right of action under the Amendment because Congress acting under § 2 is the creator and definer of 13th Amendment rights. While it is true that suits attacking the "badges and incidents of slavery" must be based on a statute enacted under § 2, suits attacking compulsory labor arise directly under prohibition of § 1, which is "undoubtedly self-executing without any ancillary

6

*arguendo,* that the Thirteenth Amendment directly gives rise to a cause of action for damages under the analysis articulated in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and its progeny.  We proceed to the question whether the actions about which Channer complains constitute involuntary servitude.

Our inquiry begins with *United States v. Kozminski,* 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988).  In that case, the Supreme Court held that

> the term "involuntary servitude" necessarily means a condition of servitude in which the victim is *forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.*

*Id.* at 952, 108 S.Ct. at 2765 (emphasis added).  *Kozminski* involved a criminal prosecution, but we effectively extended its definition of involuntary servitude to civil suits.  *See Watson v. Graves,* 909 F.2d 1549 (5th Cir.1990).[6]  In *Watson,* inmates who had participated

legislation" and "[b]y its own unaided force and effect ... abolished slavery, and established universal freedom." *The Civil Rights Cases,* 109 U.S. at 20, 3 S.Ct. at 28.  The cases upon which Appellees rely are § 2 "badges and incidents" cases and are thus inapplicable to Channer's claim.  *See, e.g., Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (suit under 42 U.S.C. § 1985(3) arising out of racially motivated assault and battery); *Holland v. Board of Trustees of Univ. Dist. Colum.,* 794 F.Supp. 420, 424 (D.D.C.1992) (holding that discrimination-based "badges and incidents" suit must be brought under 42 U.S.C. § 1981, not directly under 13th Amendment).

[6]We did not cite *Kozminski* in *Watson.*  Instead, *Watson's* definition of involuntary servitude relied on two pre-*Kozminski* cases which held that psychological and private-sector economic coercion did not constitute involuntary servitude.  *See Flood v. Kuhn,* 316 F.Supp. 271, 281 (S.D.N.Y.1970), *aff'd,* 443 F.2d 264 (2d Cir.1971), *aff'd on other grounds,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); *United States v. Shackney,* 333 F.2d 475, 486

in a work-release program sued local law enforcement officials for subjecting them to involuntary servitude. We recognized that the inmates, despite their status as convicted criminals, retained their civil right not be subjected to involuntary servitude because they had not been sentenced to hard labor. *See id.* at 1551, 1552. "Involuntary servitude" was defined as

> an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement. When the employee has a choice, even though it is a painful one, there is no involuntary servitude. A showing of compulsion is thus a prerequisite to proof of involuntary servitude.

*Id.* at 1552. (citations omitted) (internal quotation marks omitted).

Applying this rule, we held that the inmates failed to prove compulsion. Rather, they had volunteered to work outside the jail under a local policy that gave them "trusty" status, and the

> choice of whether to work outside of the jail for twenty dollars a day or remain inside the jail and earn nothing may have indeed been "painful" and quite possibly illegal under state law, but the evidence shows that neither [inmate] was forced to work or continued to work against his will.

*Id.* at 1552-53; *see also Brooks v. George County, Miss.,* 84 F.3d 157, 163 (5th Cir.1996) (holding that pretrial detainee's choice between periodically working outside jail in trusty status and remaining in jail all day, while "painful," was not unconstitutionally coercive); *Franklin v. Kyle,* 66 F.3d 323 (5th Cir.1995) (unpublished opinion) (holding that forcing prisoner to choose between working in prison industries program or risking loss

---

(2d Cir.1964). These cases are consistent with *Kozminski.*

of good-time credits was painful, but not unconstitutionally coercive).

Channer argues that he was intimidated and threatened with solitary confinement if he failed to work. Because, however, he presented no evidence that he or any other inmate had been subjected to solitary confinement for refusing to work, the district court found that he had not proved compulsion. It also found that his labor was not forced because he had been paid for the work he performed while an INS detainee.

Channer, however, presented evidence of a policy at Oakdale to place any inmate who refused to report to work, both criminal and INS detainees, in a so-called "Segregation Unit." He cited the Oakdale rule book that "[l]ate sleepers who are unable to maintain their rooms or unable to arrive to work on time are subject to disciplinary action." R. at 250. He included the affidavit of Richard Haye, also an INS detainee at the time of Channer's detention by the INS, who described a specific incident in which Haye observed Channer being threatened with detention in the segregation unit if he refused to return to the dish room to work. R. at 248. Haye also averred that all inmates at Oakdale, including himself and other INS detainees, were forced to work. R. at 248-49. Assuming without deciding that segregated detention is a form of legal punishment, we find that there would be at least some evidence that Channer's services were compelled by the use of

9

legal coercion.[7]

There are, however, two judicially-created exceptions to the prohibition of involuntary servitude. *Kozminski,* 487 U.S. at 943, 108 S.Ct. at 2760. First, the government may compel its citizens, by threat of criminal sanction, to perform certain civic duties. *See, e.g., Hurtado v. United States,* 410 U.S. 578, 589 n. 11, 93 S.Ct. 1157, 1164 n. 11, 35 L.Ed.2d 508 (1973) (jury service); *Selective Draft Law Cases,* 245 U.S. 366, 390, 38 S.Ct. 159, 165, 62 L.Ed. 349 (1918) (military service). Second, the Thirteenth Amendment "was intended to cover those forms of compulsory labor akin to African slavery which, in practical operation, would tend to produce like undesirable results," *Butler v. Perry,* 240 U.S. 328, 332-33, 36 S.Ct. 258, 259-60, 60 L.Ed. 672 (1916). It "was not intended to apply to "exceptional' cases well established in the common law at the time of the Thirteenth Amendment," such as laws preventing desertion by sailors. *Kozminski,* 487 U.S. at 944, 108 S.Ct. at 2760-61 (quoting *Robertson v. Baldwin,* 165 U.S. 275, 282, 17 S.Ct. 326, 329, 41 L.Ed. 715 (1897)).

Several courts have held that compelling individuals who are involuntarily confined in mental institutions to perform housekeeping tasks does not violate the Thirteenth Amendment. In *Bayh v. Sonnenburg,* 573 N.E.2d 398, 412 (Ind.1991), the plaintiffs

---

[7]Channer's services were not necessarily voluntary merely because he was paid for his labors. While receiving payment for services is relevant to determining voluntariness, we cannot resolve that factual question against Channer on this record. "Compensation for service may cause consent, but unless it does it is no justification for forced labor." *Heflin v. Sanford,* 142 F.2d 798, 799 (5th Cir.1944).

were mental hospital patients who performed a variety of work activities while hospitalized, such as fixing meals, scrubbing dishes, doing the laundry, and cleaning the building. The Indiana Supreme Court held that such labor fit within the Thirteen Amendment's "civic duty" exception. *Id.* at 410-11. Similarly, the Second Circuit has held that inmates in mental hospitals can be required to perform housekeeping chores. *Jobson v. Henne,* 355 F.2d 129, 131-32 (2d Cir.1966). Like the mental hospital patients in those cases, Channer performed a housekeeping chore, i.e., working in Oakdale's Food Services Department. We hold that the federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks, and that Channer's kitchen service, for which he was paid, did not violate the Thirteenth Amendment's prohibition of involuntary servitude.[8]

For reasons stated, the judgment of the district court is AFFIRMED.

---

[8]Because we hold that Channer's Thirteenth Amendment rights were not violated, we do not reach the issue of qualified immunity. We also find no merit to Channer's complaint with respect to the motion to compel discovery and the alleged untimely objections to the magistrate judge's report.