In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00097-CV


______________________________




JERRY MOORE, d/b/a THE WOODVILLE INN COMPANY, Appellant



V.



LULA M. GILDER AND BERNICE GILDER, Appellees




 


On Appeal from the 88th Judicial District Court


Tyler County, Texas


Trial Court No. 16,338




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Lula Gilder and Bernice Gilder brought suit against Jerry Moore, doing business as
The Woodville Inn Company, alleging wrongful termination in violation of the Fair Labor
Standards Act, 29 U.S.C.A. § 215(a)(3) (West 1998) (FLSA), allegedly brought about as
a result of their resistance to a condition of involuntary servitude. The Gilders also claimed
termination due to race and/or because they exercised their rights under the Thirteenth
Amendment to the United States Constitution and the Civil Rights Act of 1866, 42 U.S.C.A.
§ 1981 (West 1994). The Gilders also alleged that Moore violated Section 1981 by
subjecting them, because of their race, to more onerous work than white employees. The
Gilders' claims were eventually tried on the issue of termination due to refusal to submit
to involuntary servitude. At the close of the plaintiffs' case, Moore moved for an instructed
verdict, which was denied. A verdict for the Gilders was returned by the jury. Moore
moved for judgment notwithstanding the verdict, which the trial court denied. The Gilders
moved for entry of the judgment and attorney's fees. Moore objected, and the Gilders
responded. The trial court held a hearing on these matters and entered judgment for the
Gilders. Moore now appeals to this Court.

 The Gilders were employed by Moore (1)
 as housekeepers at a hotel. At the time they
were fired, Lula (2)
 had worked for Moore twenty-seven years and Bernice for twenty-two
years. On April 4, 1997, a meeting of housekeeping employees was held at the hotel. At
the meeting, Moore stated orally and in writing that:

 EACH DAY WHEN YOU FINISH ROOMS, YOU ARE TO RETURN YOUR
CART TO STORAGE AREA, CLOCK OUT AND NOTIFY ROOMS
MANAGER OR MOD (3) THAT ROOMS NEED TO BE CHECKED. YOU WILL
NOT BE PERMITTED TO LEAVE UNTIL ROOMS HAVE BEEN CHECKED. 
IF THINGS WERE NOT DONE, YOU WILL STAY, OFF THE CLOCK, AND
CORRECT PROBLEM. WE WILL NOT PAY OVERTIME FOR YOU TO GO
BACK AND CORRECT PROBLEM THAT SHOULD HAVE BEEN TAKEN
CARE OF WHEN YOU ORIGINALLY CLEANED THE ROOM.

 

 . . . .

 

 I CERTIFY THAT I ATTENDED THIS MEETING, AND ROOMS MANAGER
DISCUSSED EACH ITEM WITH ME. I FULLY UNDERSTAND THAT THIS
IS CONSIDERED A VERBAL WARNING THAT EACH PROCEDURE AND
RULE MUST BE DONE ACCORDING TO THESE INSTRUCTIONS. 
FAILURE TO DO SO, [sic] WILL RESULT IN TERMINATION. I ALSO
AFFIRM THAT I HAVE BEEN GIVEN A COPY OF THESE RULES.

 

 That same day the Gilders finished their work, clocked out, and went home. The
next day they were terminated. Lula's written reason for termination stated in part that she
"[v]iolated company policy and procedures by not waiting to have rooms checked by MOD." 
Bernice's written reason for termination stated in part that she "was also told that before
she could leave her rooms must be checked. She violated company procedures by not
doing this."

 Before the Gilders' terminations, they were reprimanded on several occasions for
failure to follow the company's policies and procedures. Lula and Bernice were each given
disciplinary notices on at least three different occasions, as well as personal letters for
unsatisfactory work quality, violations of company policies and procedures, and violating
safety rules. Both were also individually reprimanded for inefficiency by spending more
than thirty minutes cleaning each room, which was against company policy. Both were
given notices that failures to increase productivity could result in further disciplinary actions,
including termination. The Gilders continued to violate company policies, and according
to Moore, this was the cause of their discharges. 

 Moore asserts three points of error. He contends the trial court erred by submitting
an improper jury charge, by entering judgment on the verdict since the evidence was
legally and factually insufficient, and by awarding attorney's fees since the evidence was
insufficient to support such award.

 Moore asserts that the trial court's jury charge was erroneous in two respects. First,
the charge contained a cause of action that was either improperly pled or was abandoned
by the Gilders. Second, the charge submitted did not include Moore's questions related
to the FLSA or Moore's explanatory instructions.

 The jury charge asked:

 Did the Woodville Inn Company discharge those named below
because she exercised a right protected by the Federal Civil Rights Act
of 1866 [Section 1981]?

 

 You are instructed that a person exercises a right protected by the
Federal Civil Rights Act of 1866 [Section 1981] when she resists involuntary
servitude.

 You are instructed the term "involuntary servitude" means to force a
person to work for an employer without pay, and includes a situation where
the means used is economic oppression.

 

 You are instructed that the term "economic oppression" includes
threatening an employee with termination of employment unless the
employee consents to work "off the clock".

 

 You are instructed there may be more than one cause for an
employment decision. An employer does not discharge an employee for
exercising a protected right if the employer would have discharged the
employee when it did even if the employee had not exercised a protected
right.


 Moore contends that this jury charge was improper. The charge submitted was
based on violations of Section 1981, although the Gilders abandoned all claims of racial
discrimination before trial. The Gilders' sole claim was on the issue of involuntary
servitude. Moore contends that the claims based on Section 1981 were abandoned and
that it was error for the trial court to submit a jury question based on those claims. Moore
further contends the charge was improper because there were no pleadings to support the
question submitted and the issue was not tried by consent, there was no evidence of racial
discrimination to support the question, the question was based on Texas Pattern Jury
Charges PJC 107.5 (1997), which relates to workers' compensation, and the question
omitted the element of the defense regarding legitimate nondiscriminatory reasons for the
discharges. Moore also complains that the charge failed to instruct the jury that it was the
Gilders' burdens to prove that the reasons for the terminations offered by Moore were mere
pretexts for discrimination. 

 To preserve error in the charge, a party must make objections to the defective
submissions in the court's charge or submit requests for additional questions, definitions,
or instructions that are omitted from the charge. Flo Trend Sys., Inc. v. Allwaste, Inc., 948
S.W.2d 4, 10 (Tex. App.-Houston [14th Dist.] 1997, no writ); see Tex. R. Civ. P. 272-274. 
Moore objected and error was preserved.

 The trial court has considerable discretion in submitting the case to the jury. Mobil
Chem. Co. v. Bell, 517 S.W.2d 245, 256 (Tex. 1974); Am. Home Assurance Co. v. Brandt,
778 S.W.2d 141, 143 (Tex. App.-Texarkana 1989, writ denied); see Tex. R. Civ. P. 277. 
But, each requested jury question must be supported by the pleadings and the evidence. 
Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997); see Tex. R. Civ. P. 278.

 The improper submission of questions constitutes reversible error when harm is
suffered. Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743, 749-50 (Tex. 1980);
Wakefield v. Bevly, 704 S.W.2d 339, 348 (Tex. App.-Corpus Christi 1985, no writ).
Whether harm has been suffered may be considered in light of the charge as a whole. 
Bailey, 609 S.W.2d at 750.

 Moore's contention that the charge was not supported by the pleadings fails. In their
original petition, the Gilders pled involuntary servitude as a cause of action under the
FLSA. The complaint that the Gilders were subjected to work conditions more onerous
than those required by whites is pled as a cause of action under Section 1981. The
purpose of pleadings is to give fair notice. See Tex. R. Civ. P. 45. Moore was given notice
under the pleadings. The Gilders stated in open court that they were abandoning their
claim based on racial discrimination and that the only claim they were bringing was for
"involuntary servitude -- retaliation on the basis of the Plaintiffs' resistance to a condition
of involuntary servitude, not race." Further, in response to Moore's request for disclosure,
the Gilders stated that the legal theory of their lawsuit was that Moore violated the anti-retaliation provision of the FLSA by discharging them because they resisted involuntary
servitude. The Gilders contend there is no requirement to specify the offended statutes
during discovery. See Tex. R. Civ. P. 194.2(c) cmt. 2 (discovery respondent not required
to "brief legal issues" or disclose more than "basic assertions"). 

 Although the Gilders disclosed the wrong vehicle (the FLSA) for their cause of
action, Moore was still on notice that the Gilders would be asserting involuntary servitude
under Section 1981 as the basis for their lawsuit. Before trial, the Gilders provided a
proposed jury charge which included the involuntary servitude claim as arising under
Section 1981. Moore objected to this proposed charge on the basis of failure to disclose,
but the trial court found that fair notice had been given. We agree that Moore had
adequate notice.

 Moore also contends there was no evidence of racial discrimination to support the
jury question submitted. In objections to the charge, Moore further argued there were
legitimate nondiscriminatory reasons for discharging the Gilders and that the trial court
erred by not submitting a charge that conformed with the federal burden-shifting analysis
used when discriminatory treatment is alleged to have occurred. See Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105,
116-17 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125
L.Ed.2d 407, 415-16 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207, 215 (1981); McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668, 677-78 (1973). 

 Moore further contends that the jury charge was an improper statement of the law. 
Moore's contention is that involuntary servitude is not the type of activity that comes under
the provisions of Section1981. Moore is correct that involuntary servitude is not expressly
enumerated in the federal statute. (4)
 The main focus of Section 1981 is to grant to all people
rights "enjoyed by white citizens." (5)
 The term "economic oppression" as defined in the
court's charge to the jury is also not a part of the statute. See 42 U.S.C.A. § 1981. Moore
contends that to prove a claim under Section 1981, the Gilders were required to show they
were not afforded the full and equal benefit of the law as enjoyed by white people, not that
they were forced to work off the clock. (6)
 

 It is clear that Section 1981 includes protection from involuntary servitude. The sole
purpose of Section 1981 was to enforce the Thirteenth Amendment. See Tillman v.
Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 439 n.11, 93 S.Ct. 1090, 35 L.Ed.2d 403,
410 n.11 (1973). It has long been settled that the Thirteenth Amendment "is not a mere
prohibition of State laws establishing or upholding slavery, but an absolute declaration that
slavery or involuntary servitude shall not exist in any part of the United States." Memphis
v. Greene, 451 U.S. 100, 120, 101 S.Ct. 1584, 67 L.Ed.2d 769, 785 (1981) (quoting Civil
Rights Cases, 109 U.S. 3, 20, 3 S.Ct. 18, 27 L.Ed. 835, 842 (1883)). The underlying
purpose of Section 1981 was to enforce Thirteenth Amendment rights, including the right
to freedom from "all . . . forms of compulsory service." Slaughter-House Cases, 83 U.S.
36, 90, 21 L.Ed. 394, 413 (1873). 

 However, discrimination is a key element when asserting a cause of action under
Section 1981. See 42 U.S.C.A. § 1981; Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458
U.S. 375, 388-89, 102 S.Ct. 3141, 73 L.Ed.2d 835, 848-49 (1982). The United States
Supreme Court has found that Section 1981 can only be violated by purposeful
discrimination. (7)
 Gen. Bldg. Contractors Ass'n, 458 U.S. at 388-91. The primary thrust of
Section 1981 has been to deal with discrimination in the employment context. (8) See 42
U.S.C.A. § 1981; Davis v. County of Los Angeles, 566 F.2d 1334, 1340 (9th Cir. 1977),
vacated on other grounds, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); Carter v.
Gallagher, 452 F.2d 315, 325 (8th Cir. 1971). Therefore, Moore is correct that
discrimination is vital to maintenance of a Section 1981 cause of action and that a Section
1981 claim cannot be sustained without a showing of purposeful discrimination.

 In a motion for rehearing, the Gilders assert that Section 1981 affords them a
remedy for their alleged retaliation claims without corresponding claims for discrimination
and quote the following language from Goff v. Cont'l Oil Co., 678 F.2d 593, 598 (5th Cir.
1982): "Section 1981 would become meaningless if an employer could fire an employee
for attempting to enforce his rights under that statute." However, the context of this
quotation makes clear this case did involve a claim of racial discrimination:

 We hold that § 1981 does encompass claims of retaliation when an adverse
action is taken in response to a person's filing of an EEOC charge or civil
rights lawsuit in which racial discrimination is alleged. . . . Were we to protect
retaliatory conduct, we would in effect be discouraging the filing of
meritorious civil rights suits and sanctioning further discrimination against
those persons willing to risk their employer's vengeance by filing suits. 
Section 1981 would become meaningless if an employer could fire an
employee for attempting to enforce his rights under that statute.


Id. (emphasis added). 


 The Gilders also point the Court to Shackelford v. DeLoitte & Touche, L.L.P., 190
F.3d 398 (5th Cir. 1999). In a footnote, the Shackelford court said, "evidence sufficient to
support a claim of retaliation is not necessarily sufficient to support a claim of
discrimination 'because of' race." Id. at 405 n.4 The Gilders attempt to use Shackelford
to say again that a Section 1981 claim for retaliation does not require proof of racial
discrimination. We disagree.

 Shackelford sued DeLoitte & Touche for violations of Title VII of the Civil Rights Act
of 1964, 42 U.S.C.A. § 2000e, et seq.; 42 U.S.C. A. § 1981, and the Texas Commission
on Human Rights Act, Tex. Lab. Code Ann. § 21.001, et seq. Shackelford, 190 F.3d at
403. Shackelford specifically accused DeLoitte & Touche of wrongful termination based
on racial discrimination and based on retaliation for engaging in activity protected by Title
VII. Id. The trial court in Shackelford granted DeLoitte & Touche's motion for summary
judgment on all claims. Shackelford appealed the summary judgment. The Fifth Circuit
affirmed in part, reversed in part, and remanded for further proceedings consistent with the
opinion. Id. at 401. 

 The court affirmed the summary judgment on the claim of discrimination. Id. at
405-06. The court found that Shackelford met her prima facie case of discrimination and
thereby successfully raised a presumption of discrimination. Id. at 404. The burden then
having been shifted to the defendant, DeLoitte & Touche rebutted the presumption by
providing a legitimate, nondiscriminatory reason for its actions. Id. Once DeLoitte &
Touche satisfied its burden of rebutting the presumption, Shackelford was required to
prove the proffered reasons were pretextual. Id. Once a Title VII case reaches the pretext
stage, the only question on summary judgment is whether there is a conflict in substantial
evidence to create a jury question regarding discrimination. Id. The court in Shackelford
found "[the] evidence, even when viewed in the light most favorable to Shackelford, is
insufficient to create a jury question regarding the discriminatory termination claim." Id. at
405. 

 The standards for proving a discrimination claim and a retaliation claim are different. 
Id. at 405 n.4. Though the court affirmed the trial court on the discrimination claim, it
reversed the trial court on the claim of retaliation, finding there was sufficient evidence to
support an inference that retaliation was the "but for" cause of Shackelford's termination. 
Id. at 407. However, the court reached this point because the case reached the pretext
stage: "Since this case reached the pretext stage, the only question on summary
judgments is whether the evidence of retaliation, in its totality, supports the inference of
retaliation." Id. The court reversed and remanded the claim of retaliation because it found
sufficient evidence to support an inference that retaliation was the "but for" cause of
Shackelford's termination. Id.

 Shackelford is distinguishable from this case. Shackelford involved claims under
Title VII, Section 1981, and the Texas Commission on Human Rights Act. This case
involves only a claim under Section 1981. The Gilders dropped all their discrimination
claims and relied solely on their claims of involuntary servitude under Section 1981. Under
a Section 1981 claim, discrimination is a key element. See 42 U.S.C.A. § 1981; Gen. Bldg.
Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 388-89, 102 S.Ct. 3141, 73 L.Ed.2d 835,
848-49 (1982). Without a purposeful showing of discrimination, Section 1981 cannot be
violated. Gen. Bldg. Contractors Ass'n, 458 U.S. at 388-91. 

 Since all claims regarding racial discrimination were abandoned by the Gilders, their
Section 1981 claims fail as a matter of law. The improper submission of issues constitutes
reversible error when harm is suffered. Bailey, 609 S.W.2d at 749-50; Wakefield, 704
S.W.2d at 348; see Tex. R. Civ. P. 434. As the Section 1981 action cannot be sustained
due to the abandonment of any allegation regarding discrimination, and all other claims
asserted by the Gilders have likewise been abandoned, the judgment of the trial court was
in error. It is not necessary to address Moore's other contentions. 


 The judgment is reversed, and judgment is hereby rendered in favor of Moore.




 Donald R. Ross

 Justice

 

Date Submitted: April 3, 2001

Date Decided: October 19, 2001


Do Not Publish

1. 
 [1]Jerry Moore did not actively participate in hotel operations during the relevant
events. References to Moore's acts refer to acts of Moore's agents.

2. In a motion for rehearing urged after we issued our original opinion in this case, the
Gilders complain in a footnote of our use of their first names only, suggesting that such
practice is a carryover from segregation times when "Black persons were customarily
addressed and referred to by their first names only . . . ." Where two or more individuals
in a given case have the same last name, it is the practice of the writing justice in this case
to initially refer to those individuals by their first and last names, and thereafter distinguish
between them by reference to their respective first names. See In re Marriage of Loftis,
40 S.W.3d 160 (Tex. App.-Texarkana 2001, no pet.); In re Walters, 39 S.W.3d 280 (Tex.
App.-Texarkana 2001, no pet.); In re Davis, 30 S.W.3d 609 (Tex. App-Texarkana 2000,
no pet.); In re Marriage of Parker, 20 S.W.3d 812 (Tex. App.-Texarkana 2000, no pet.);
In re Marriage of Morris, 12 S.W.3d 877 (Tex. App.-Texarkana 2000, no pet.); McLaurin
v. McLaurin, 968 S.W.2d 947 (Tex. App.-Texarkana 1998, no pet.). This method of
distinguishing between individuals who have the same last name is applied without regard
to the race or any other personal characteristic of the individuals involved and is not
intended to be disrespectful of any person. 

3. 
[3]Manager On Duty.
4. 42 U.S.C.A. § 1981(a) (West 1994) states:


 All persons within the jurisdiction of the United States shall have the same
right in every State and Territory to make and enforce contracts, to sue, be
parties, give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white
citizens, and shall be subject to like punishment, pains, penalties, taxes,
licenses, and exactions of every kind, and to no other.

5. 42 U.S.C.A. § 1981 (West 1994) is based on the Thirteenth Amendment to the
United States Constitution, and it was originally enacted in the Civil Rights Act of 1866. 
Lewis v. Bethlehem Steel Corp., 440 F.Supp. 949, 964 (D. Md. 1977).

6. It should be noted that under a direct federal cause of action, involuntary servitude
has been defined. The term "involuntary servitude" necessarily means a condition of
servitude in which the victim is forced to work for the defendant by the use or threat of
physical restraint or physical injury, or by the use or threat of coercion through law or legal
process. United States v. Kozminski, 487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d 788,
811 (1988). Although Kozminski involved a criminal charge of indentured servitude, the
Fifth Circuit has essentially extended the definition to civil cases. Channer v. Hall, 112
F.3d 214, 217 (5th Cir. 1997); see Watson v. Graves, 909 F.2d 1549 (5th Cir. 1990). In
civil actions involuntary servitude has been held to constitute an action by the master
causing the servant to have, or to believe he/she has, no way to avoid continued service
or confinement. When the employee has a choice, even though it is a painful one, there
is no involuntary servitude. A showing of compulsion is thus a prerequisite to proof of
involuntary servitude. Channer, 112 F.3d at 217-18 (citing Watson, 909 F.2d at 1552).

7. The purpose of 42 U.S.C.A. § 1981 is to deal with claims of discrimination. See
generally David B. Sweet, J.D., Annotation, Supreme Court's Views as to Constitutionality,
Construction, and Application of 42 USCS § 1981, Providing for Equal Rights as to such
Matters as Contracts and Legal Proceedings, 105 L.Ed.2d 737 (1991).

8. The prohibitions of Section 1981 encompass private as well as governmental
action. Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 387-88, 102 S.Ct.
3141, 73 L.Ed.2d 835, 848-49 (1982).


067-CR%20Connally%20v.%20State%20Opinion%20mtd_files/image001.png"
 o:title=""/>
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00067-CR

                                                ______________________________

 

 

                           JASON CORNELIUS CONNALLY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 114th
Judicial District Court

                                                             Smith County, Texas

                                                       Trial Court
No. 114-1488-10

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Jason
Cornelius Connally[1] entered an
open plea of guilty to a charge of aggravated robbery.   The trial court sentenced Connally to thirty
years incarceration.   Evidence at the
plea and sentencing hearings indicates Connally drove his cousins to a store,
which they robbed; Connally effectively was the getaway driver.   Connally stated he did not know, until after
the robbery, that one of his cousins had a pistol during the robbery.   Connally acknowledged he did nothing to
distance himself from the cousins following the robbery or to alert police to
their identities or crime.   

            Connallys
attorney on appeal has filed a brief which discusses the record and reviews the
proceedings in detail. Counsel has thus provided a professional evaluation of
the record demonstrating why, in effect, there are no arguable grounds to be
advanced.  This meets the requirements of
Anders v. California, 386 U.S. 738
(1967); Stafford v. State, 813 S.W.2d
503 (Tex. Crim. App. 1981); and High v.
State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
states he mailed a copy of the brief and a letter to Connally, informing him of
his right to file a pro se response and of his right to review the record.  Connally in turn has filed a one-page pro se response, claiming ineffective
assistance of counsel and cruel and unusual punishment in light of [his] role
in the offense.  Counsel has also filed
a motion with this Court seeking to withdraw as counsel in this appeal.

            Connally
presents no argument or legal authority for his general claims of ineffective
assistance of counsel and that his sentence was cruel and unusual
punishment.  He has failed to adequately
brief these claims.  Tex. R. App. P. 38.1(h).  

            Regardless,
he stated to the trial court he was satisfied with his trial counsels
representation.  Further, there is
nothing in the record to rebut the strong presumption trial counsels actions
were the result of sound trial strategy. 
 See Jackson v. State, 877 S.W.2d 768, 771, 773 (Tex. Crim.
App. 1994).  Connally has failed to meet
the requirements of Strickland, and
thus has failed to demonstrate ineffective assistance of counsel.   Strickland v. Washington,
466 U.S. 668 (1984).

            As for
Connallys assertion his sentence constituted cruel and unusual punishment, his
sentence of thirty years was within the statutory range for a first degree
felony.  See Tex. Penal Code Ann.
§ 12.32 (West 2011); Jordan v. State, 495
S.W.2d 949, 952 (Tex. Crim. App. 1973). 
Connally lodged no objection to the sentence to the trial court.  Tex. R. App. P. 33.1(a)(1)(A);  Rhoades v. State, 934 S.W.2d 113, 119
(Tex. Crim. App. 1996); Mullins v. State, 208 S.W.3d 469 (Tex. App.Texarkana
2006, no pet.).  He has not preserved
this claim for appellate review.  Even if
the contention had been preserved for review, the contention fails.  Since the sentence is within the statutory range,
there is no indication that the severity of the sentence is grossly
disproportionate to the gravity of the offense, and no evidence establishes the
sentence is disproportionate as compared with other sentences in the
jurisdiction.  See Mullins, 208 S.W.3d at
470.

            We have
determined that this appeal is wholly frivolous.  We have independently reviewed the clerks
record and the reporters record, and find no genuinely arguable issue.  See Halbert v. Michigan, 545 U.S. 605, 623
(2005).  We, therefore, agree with
counsels assessment that no arguable issues support an appeal.  See Bledsoe v. State, 178 S.W.3d 824, 82627
(Tex. Crim. App. 2005).  In a frivolous
appeal situation, we are to determine whether the appeal is without merit and
is frivolous, and if so, the appeal must be dismissed or affirmed.  See Anders, 386 U.S. at 744.

            We affirm
the judgment of the trial court.[2]    

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          August
3, 2011

Date Decided:             August
15, 2011

 

Do Not Publish           

 

 

 

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization efforts.  See Tex. Govt Code Ann. § 73.001 (Vernon 2005).  We are unaware of any conflict between
precedent of the Twelfth Court of Appeals and that of this Court on any
relevant issue.  See Tex. R. App. P.
41.3.





[2]Since
we agree this case presents no reversible error, we also, in accordance with Anders, grant counsels request to
withdraw from further representation of appellant in this case.  No substitute counsel will be appointed.  Should appellant wish to seek further review
of this case by the Texas Court of Criminal Appeals, appellant must either
retain an attorney to file a petition for discretionary review or appellant
must file a pro se petition for discretionary review. Any petition for
discretionary review must be filed within thirty days from the date of either
this opinion or the last timely motion for rehearing that was overruled by this
Court.  See Tex. R. App. P.
68.2.  Any petition for discretionary
review must be filed with this Court, after which it will be forwarded to the
Texas Court of Criminal Appeals along with the rest of the filings in this
case.  See Tex. R. App. P.
68.3.  Should a petition for
discretionary review be filed after September 1, 2011, it should be filed
directly with the Texas Court of Criminal Appeals.  See
Texas Court of Criminal Appeals Misc. Docket No. 11-004, July 12, 2011.   Any
petition for discretionary review should comply with the requirements of Rule
68.4 of the Texas Rules of Appellate Procedure.  See Tex. R. App. P. 68.4.