**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-6017**

———————

WILLIAM G. HARDEN,

　　　　　Plaintiff – Appellant,

　　　v.

SCOTT BODIFORD, Administrator, in his official and
individual capacity; JAMES M. DORRIETY, Administrator, in
his official and individual capacity; CORPORAL CATHEY,
Detention Officer, in her official and individual capacity;
GREENVILLE COUNTY DETENTION CENTER; PAUL B. WICKENSEIMER,
Clerk of Court for Greenville County, in his official and
individual capacity,

　　　　　Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
South Carolina, at Greenville.　Richard Mark Gergel, District
Judge.　(6:09-cv-02362-RMG)

———————

Submitted:　July 8, 2011　　　　　Decided:　August 11, 2011

———————

Before WILKINSON, NIEMEYER, and DAVIS, Circuit Judges.

———————

Affirmed in part; vacated and remanded in part by unpublished
per curiam opinion.

———————

William G. Harden, Appellant Pro Se. Russell W. Harter, Jr.,
CHAPMAN, HARTER & GROVES, PA, Greenville, South Carolina, for
Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William G. Harden, a South Carolina prisoner, seeks review of the district court's orders granting summary judgment and partial summary dismissal to Defendants in Harden's pro se 42 U.S.C. § 1983 (2006) suit and denying Harden's motion for reconsideration. Harden alleged claims of forced labor and denial of access to courts (among others) during his incarceration at the Greenville County Detention Center ("Detention Center"). We affirm in part and vacate and remand in part.[1]

I.

Harden alleged that from June 2007 to October 2007, when he was a pretrial detainee, he was assigned to work as a "pod worker." He was informed that, if he refused work assignments, he would be placed in punitive segregation. He was required to work seven days a week, ten hours a day, until he was released. His alleged duties included serving meals to more than 145 inmates; sorting uniforms; distributing blankets; cleaning floors, tables, walls, windows, and railings; scrubbing showers; emptying trash; and cleaning up after other inmates.

---

[1] We previously dismissed for lack of jurisdiction Harden's interlocutory appeal from certain of the district court's orders. Harden v. Bodiford, No. 10-6041 (4th Cir. May 27, 2010).

Harden further alleged that he was 66-years-old at the time and that he was one of only four to six workers assigned to clean the entire institution. As "relief," Harden calculated his damages based on an hourly wage.

In their motion for summary judgment, Defendants asserted that Harden voluntarily signed up to participate in the inmate worker program, that he was appropriately screened medically for his assignments, and that he earned certain benefits and privileges from his participation in the program, e.g., extra food, etc. Defendants asserted that there was a waiting list of inmates desiring to participate in the work program and that it would have been easy for Harden to terminate his participation had he wished to do so. In his response to the motion for summary judgment, which took the form of a hand-drawn affidavit submitted under penalties of perjury, together with a memorandum of legal authorities, Harden denied that he volunteered to participate in the inmate work program. He again insisted that his claim was a claim of forced labor and involuntary servitude and that, contrary to the Defendants' contention, his choices were stark: work or solitary confinement.

The district court granted summary judgment in favor of Defendants, holding that "a claim arising from the non-payment of wages to an inmate is not valid under 42 U.S.C.

4

§ 1983, whether asserted as breach of contract, denial of equal protection, involuntary servitude or cruel and unusual punishment." The court denied Harden's motion for reconsideration, ruling that "[a]ssigning a prisoner to a work detail without compensation is not unconstitutional."

We review de novo a district court's award of summary judgment, S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010), viewing the underlying facts and the permissible inferences drawn therefrom in the light most favorable to the non-moving party. See In Re French, 499 F.3d 345, 352 (4th Cir. 2007).

It is settled that a pretrial detainee may not be subjected to any form of punishment. Hause v. Vaught, 993 F.2d 1079, 1085 (4th Cir. 1993). To establish that a particular condition of confinement is constitutionally impermissible punishment, the pretrial detainee must show that it was either (1) imposed with intent to punish or (2) not reasonably related to a legitimate non-punitive governmental objective (such that an intent to punish could be inferred). Id. In Hause, we found that "general housekeeping responsibilities" are not inherently punitive and are related to the legitimate, non-punitive governmental objective of prison cleanliness. Id.; see also Channer v. Hall, 112 F.3d 214, 218-19 (5th Cir. 1997) (holding that "housekeeping chores" like "fixing meals, scrubbing dishes,

5

doing the laundry, and cleaning the building" fit within the Thirteenth Amendment's "civic duty" exception to the prohibition against involuntary servitude).[2]

Having carefully reviewed the record here in the light most favorable to Harden, we conclude that Harden's sworn allegations, if true, describe circumstances that rise above those in the "general housekeeping" cases. Specifically, we conclude that Harden's allegations are sufficient to sustain a claim of unconstitutional punishment. See Tourscher v. McCullough, 184 F.3d 236, 242 (3d Cir. 1999) (holding that "the nature of the services" and "the amount of time they took" was required information before the court could determine if prison officials deprived pretrial detainee of Thirteenth Amendment or due process rights); see also Channer, 112 F.3d at 217-18 (noting that threatening prisoners with segregation if they refused to work could rise to the level of involuntary servitude); Ford v. Nassau County Executive, 41 F. Supp.2d 392, 398 (E.D.N.Y. 1999) (noting that "unduly strenuous" tasks might indicate intent to punish). We are persuaded that the district

---

[2] Harden also frames his claims under the Thirteenth Amendment's prohibition against involuntary servitude. While the Thirteenth Amendment does not apply to convicted prisoners, it may provide a cause of action, under certain circumstances, when a pretrial detainee is forced to work. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

6

court erred when it credited the Defendants' assertion that Harden had voluntarily consented to participate in the Detention Center's inmate work program. To the contrary, in the face of Harden's sworn denial of the Defendants' factual assertions, there remained genuine disputes of material fact not amenable to resolution on summary judgment.

Moreover, the district court construed Harden's claim too narrowly as one for "lost wages." Specifically, the district court concluded that "[a]ssigning a prisoner to a work detail without compensation is not unconstitutional" without considering Harden's pretrial detainee status or the actual nature of his job(s). We note that the type of tasks Harden alleges he was required to perform -- distributing food and uniforms, cleaning, etc. -- are mainly of the general housekeeping nature that this court approved in Hause. Indeed, to hold that such tasks are inherently punitive might deprive both detainees and staff of constructive activities useful to the proper maintenance of detention facilities and to the prevention of prolonged inactivity and the accompanying frustrations it might engender among those awaiting trial. Harden has, however, alleged a particularly onerous volume of such ordinary housekeeping tasks, and we thus cannot affirm without proper review as to whether Harden's specific circumstances evidence an impermissible intent to punish.

7

For these reasons, we vacate the district court's orders and remand for further proceedings.[3]

## II.

Harden also alleged that the Detention Center had no law library or any alternative resources for detainee legal assistance. As such, he was not able to determine that he had a claim for involuntary servitude until after his release. The Defendants did not address this claim in their motion for summary judgment. In his response, Harden realleged his claims and added that, during his separate 2008 incarceration, he was unable to research and file a motion to set aside his convictions or a notice of appeal in the same cases.

The magistrate judge recommended granting summary judgment on the basis that Harden was able to file the instant action upon his release. The magistrate judge did not address Harden's allegations that he could not attack his criminal

---

[3] In remanding the "forced labor" claim for further consideration, we note that the district court decided the motion for summary judgment without the benefit of any discovery by the parties and without the benefit of a reply memorandum from the Defendants. We further note that there is some question as to whether Harden has fully identified the correctional officer who allegedly threatened him with punitive segregation should he refuse work assignments. In any event, we of course intimate no view as to the extent or the ultimate outcome of further proceedings before the district court.

8

convictions. In his timely objections to the magistrate judge's report and recommendation, Harden argued that he was held at the Detention Center based on an "unwarranted bench warrant (as the Circuit Court later determined)" and for lack of legal resources he was unable to apply for injunctive relief or habeas corpus to obtain his liberty. Despite these allegations, the district court granted summary judgment, ruling that, "Plaintiff has offered no evidence of any impediment in the timely assertion of his legal rights." In his motion for reconsideration, Harden again alleged that he was unable, in 2008, "to have his conviction set aside and his release from the detention center effectuated." The district court denied the motion for reconsideration, concluding that, "Plaintiff has not and cannot demonstrate any actual injury."

The Constitution does not guarantee an inmate adequate legal assistance and an adequate law library; rather, it guarantees a right to reasonable access to the courts. See Lewis v. Casey, 518 U.S. 343, 351 (1996); Bounds v. Smith, 430 U.S. 817, 838 (1977). In order to establish a claim of denial of access to the courts, an inmate cannot rely on conclusory allegations but must instead allege an actual injury or specific harm or prejudice that has resulted from the denial. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc).

In the course of the proceedings below, Harden alleged that he was imprisoned on improper bench warrants erroneously issued based on his alleged failure to appear. This incarceration took place from March to October 2007 and for eight days in March 2008. He further asserted that the bench warrants were shown, in later state court proceedings, to be improper. Specifically, with regard to the first warrant, Harding asserts that he (eventually) proved that he had not been properly notified of his duty to appear. Regarding the second warrant, Harden claimed that the warrant was lifted when the Solicitor's Office admitted "that it had submitted false testimony." Harden claimed that, had he been given access to a law library or other legal assistance, he would have determined that he could challenge these bench warrants and would have spent a shorter time in detention.

Neither the Defendants nor the district court addressed Harden's allegations that his lack of access to legal assistance prevented him from challenging his unwarranted pre-trial incarceration. Similarly, the Defendants did not dispute his assertions that the Detention Center lacked a law library or alternative resources affording detainees basic legal assistance. Instead, the Defendants contended, and the district court concluded, that Harden had failed to show any actual injury. We disagree. Because Harden's undisputed allegations

10

are sufficient, if believed, to show that he was denied access to courts and suffered genuine prejudice, resulting in prolonged incarceration, we vacate the portions of the district court's orders dismissing the access to courts claim and remand for such further consideration as the district court deems advisable in light of our disposition of this appeal.

## III.

Harden claims that the district court treated the parties inequitably. Specifically, Harden asserts that the court sua sponte granted the Defendants an extension of time to file their motion for summary judgment, while denying his motion for an order of default. In contrast, the court allegedly ignored Harden's motions for extension of time.

The record belies Harden's assertions. His requests for extensions of time were promptly granted. Defendants did informally request an extension of time to file a motion for summary judgment. While Defendants' motion for an extension of time was not timely made, the deadline in question was a matter of court scheduling, rather than a statutory requirement. Accordingly, we conclude that it was within the court's discretion to grant the Defendants' belated request to extend time.

11

IV.

Finally, Harden asserted that the Clerk of Court of Greenville County, Defendant Paul B. Wickenseimer, abused his powers to issue subpoenas to compel attendance at court. The magistrate judge recommended dismissing the claims against Wickenseimer on the ground that Wickenseimer was protected by quasi-judicial immunity (among other bases). In his objections, Harden sought to withdraw his damage claims against Wickenseimer; he sought, instead, declaratory and injunctive relief requiring the creation of a new attendance-tracking system. He also sought to add a claim under the South Carolina Tort Claims Act. Finding that Harden did not object to the magistrate judge's recommendation, the district court dismissed the claims against Wickenseimer without prejudice. On appeal, Harden challenges the district court's conclusion that Wickenseimer was protected by immunity.[4]

The district court reviews de novo those portions of the magistrate judge's report to which specific objections are made. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of objections, the district court is not required to

_____

[4] In his reply brief on appeal, Harden also asserts that he sought to amend his complaint. However, Harden has waived this issue by failing to raise it in his opening brief. See Yousefi v. INS, 260 F.3d 318, 326 (4th Cir. 2001) (declining to consider claim raised for the first time in reply brief).

explain its reasons for adopting the report.  Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).  Additionally, the filing of specific objections to a magistrate judge's recommendation is necessary to preserve appellate review of the substance of the recommendation when the parties have been warned that failure to object will waive appellate review.  Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

Because Harden received notice of the consequences of a failure to object and yet did not object to the finding of quasi-judicial immunity, he has waived his right to appellate review.  Accordingly, we do not disturb the district court's order dismissing (without prejudice) Harden's claims against Wickenseimer.

V.

For the reasons set out above, we affirm in part and vacate and remand in part.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART

13