**Julia SUMPTER, Appellant,**

v.

**Robert HARPER, Appellee.**

**No. 81–2002.**

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1982.

Decided July 21, 1982.

Rehearing Denied Aug. 20, 1982.

Edward M. Brown, Charleston, S. C. (Moore, Brown & Davis, Charleston, S. C., on brief), for appellant.

William W. Doar, Jr., Georgetown, S. C., for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Plaintiff Julia Sumpter appeals the District Court's dismissal of her complaint for lack of subject matter jurisdiction, *see* Fed.

R.Civ.P. 12(b), and for failure to state a claim upon which relief could be granted, *see id.* 12(b)(6). Determining the judgment of the Court to be beyond reproach, we affirm.

I

With her complaint viewed most favorably, it appears that Julia Sumpter was a patient of defendant physician Robert Harper from 1963 until at least February 7, 1980. On the latter date, she visited Dr. Harper's office with a blood pressure problem. The defendant then, she alleges, improperly diagnosed her as having breast cancer and thereupon recklessly performed a mastectomy without proper facilities or concern for her health and welfare.

In addition to these accusations which, if true, would constitute medical malpractice, plaintiff asserted that Dr. Harper maintained segregated waiting rooms and otherwise treated blacks discriminatorily. Specifically, his allegedly outrageous conduct towards her on February 7 was said to be a product of racial animus. Charging that Dr. Harper was licensed by the State of South Carolina and that he received Federal Medicare-Medicaid funds, plaintiff sought to establish causes of action under the Thirteenth and Fourteenth Amendments as well as under 42 U.S.C. §§ 1981,[1] 1983,[2] and 2000d[3] (1976).

1. This provision states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981 (1976).

2. Under this statute,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. *Id.* § 1983.

3. This section declares:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. *Id.* § 2000d.

After argument *ore tenus*, the District Court granted defendant's motion to dismiss. It observed that both parties are residents of South Carolina, thus concluding that unless the plaintiff could demonstrate the existence of a Federal claim, the suit must be dismissed. Rather than finding a well-pleaded Federal cause of action, the decision was that plaintiff's complaint actually alleged nothing more than a tort under State law, compelling dismissal. On this appeal, the District Court's judgment is challenged in each respect save as to the decision as to § 1981.

## II

■ Under both the Fourteenth Amendment and § 1983, a plaintiff charging an unconstitutional deprivation of civil rights (§ 1983), or denial of equal protection (Fourteenth Amendment), must plead and prove, *inter alia*, action under color of State law. To keep within these straits, plaintiff pleads that South Carolina's grant of a license to practice medicine establishes an adequate nexus between the State and an otherwise private party to convert his behavior into that of the State's. This contention, however, is foreclosed by our decision in *Hall v. Quillen*, 631 F.2d 1154 (4th Cir. 1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982).

In *Hall*, we reviewed the dismissal of a § 1983 action against a State judge who issued an involuntary commitment order, the court-appointed physician who examined the plaintiff, and the attorney appointed to represent the plaintiff. Although the District Court had dismissed the action against all defendants on immunity grounds, we concluded that it properly should have been dismissed because no State action was disclosed. Citing decisions of six other Circuits, we held that a physician, even when acting under court appointment, does not do so 'under color of State law' by merely practicing medicine. *A fortiori*, where the only link is a State license to practice, there is no sufficient ground for concluding that a private physician can be sued under § 1983 for fault in treating his patients. *See also Polk County v. Dodson*, —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

■ Plaintiff's assertion that the defendant may be guilty of violating the Thirteenth Amendment also is meritless. That Amendment, of course, prohibits slavery and involuntary servitude. While it restrains the conduct of private parties, as well as public entities, there simply is no representation in plaintiff's complaint that she was subjected to these impositions. Rather, her contention seems to be that defendant's conduct saddles her with a 'badge or incident of slavery.' True or not, defendant's behavior violates Federal law if, but only if, it breaches some statute enacted pursuant to Section 2 of the Amendment. As noted, however, the claim under § 1983, a key enforcement vehicle for the Thirteenth and Fourteenth Amendments, fails for want of State action.

Finally, we turn to plaintiff's demand that a trial be had on her claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d–4 (1976). We are unpersuaded; instead, we agree with the District Court's conclusion that plaintiff failed to posit a tenable Federal claim.

In relevant part, § 2000d declares simply that "[n]o person ... shall, on the ground of race, color, or national origin, ... be subjected to discrimination under any program or activity receiving Federal financial assistance." From these words, it seems plain that Congress sought to ensure that all persons be entitled to participate in Federal and Federally-subsidized programs regardless of their race, color, or national origin. Moreover, through the enforcement mechanisms scrupulously ordained in §§ 2000d–1 and 2000d–2, Congress made it clear that the policy of the United States henceforth would be to refrain from funding any program which permitted discrimination on a prohibited basis.

■ What seems equally clear by negative implication is that Congress did not intend Title VI to establish a broad right of action for persons, who are aggrieved by

the failure of some Federal program, to seek redress in the Federal courts.[4] For those deficiencies, resort simply must be had to some other Federal legislation authorizing private enforcement or the general statutory and common law of the States.

Illustrating this point is the Fifth Circuit's recent decision in *Drayden v. Needville Independent School District*, 642 F.2d 129 (5th Cir. 1981). The Court there held that, at most, § 2000d authorizes suits for declaratory and injunctive relief. *Id.* at 133. Actions for back pay and other losses were held to be outside the scope of Title VI. Thus, suits for money damages could be maintained, if at all, only under some other Federal or State law.

█ Similarly, while Title VI might allow this plaintiff to seek to enjoin defendant from discriminating against her in the provision of medical care under Medicare or Medicaid,[5] it clearly affords her no right to seek redress for injuries sustained on account of allegedly negligent or reckless treatment by the defendant doctor. His diagnostic and surgical skills, however, are not subjects of adjudication under Title VI. We accordingly hold that plaintiff, complaining of little more than medical malpractice, lacks standing to prosecute this claim under § 2000d, in an effort to recover money damages. *See Taylor v. Cohen*, 405 F.2d 277, 282 (4th Cir. 1968) (*en banc*).

Affirmed.

**4.** Given our conclusion that plaintiff may not prosecute *this* claim under Title VI, we eschew any resolution of the broader question of whether *any* right of action is available to a private litigant under this statute.

**5.** Neither party pressed the question before us, so we assume that defendant's participation in Medicare and Medicaid constitutes participation in a "program or activity receiving Federal financial assistance" within the meaning of § 2000d.