**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2009

Charles R. Fulbruge III
Clerk

No. 08-50603

LACRESHA MURRAY; R L MURRAY, Individually and As Next Friend
of Cleo Murray, Jason Murray, Tyler Murray, and Trent Murray; SHIRLEY
MURRAY, Individually and As Next Friend of Cleo Murray, Jason Murray,
Tyler Murray, and Trent Murray; SHANTAY MURRAY, Individually

Plaintiffs-Appellants

v.

RONNIE EARLE, Individually and as District Attorney of Travis County,
Texas; DAYNA BLAZEY, Individually and as an Assistant District Attorney
of Travis County, Texas; STEPHANIE EMMONS, Individually and as an
Assistant District Attorney of Travis County, Texas; THOMAS CHAPMAN,
Executive Director, Texas Department of Protective and Regulatory Services;
ANGELA MCGOWN, Individually and as Supervisor of the Travis County
Child Protective Services; MELISSA GREER, Individually and as a Case
Worker, Travis County Child Protective Services; MEGAN MOORE,
Individually and as Case Worker Travis County Child Protective Services;
STANLEY KNEE, Chief of the City of Austin Police Department; HECTOR
REVELES, Individually and as a Detective of the Austin Police Department;
PAUL JOHNSON, Individually and as a Detective of the Austin Police
Department; ERNEST PEDRAZA, Individually and as a Detective of the
Austin Police Department; ALBERT EELLS, Individually and as a Detective
of the Austin Police Department

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:02-CV-552

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit
Judges.

PER CURIAM:[*]

## I. INTRODUCTION

On her third appeal to this Court, appellant LaCresha Murray ("Murray") raises five issues, challenging: (1) this Court's March 31, 2005 interlocutory order reversing the district court's denial of immunity for appellees Dayna Blazey, Stephanie Emmons, Hector Reveles, Angela McGown, Ernest Pedraza and Albert Eells on her Fifth Amendment and related state civil-conspiracy claims; (2) this Court's April 11, 2008 interlocutory order reversing the district court's denial of immunity for appellees Emmons, McGown, Reveles, Pedraza, and Eells on her Fourteenth Amendment claims; (3) the district court's dismissal of Murray's Sixth Amendment claims against appellee Dayna Blazey and the "Travis County District Attorney's Office"; (4) the district court's alleged failure to observe a Texas Court of Appeals ruling as the "law of the case"; and (5) the district court's dismissal of Murray's Thirteenth and Fourteenth Amendment claims against appellee (former[1]) District Attorney Ronnie Earle. Finding no grounds for reversal, we AFFIRM the district court's judgment dismissing this case.

## II. BACKGROUND

The facts underlying this appeal were set forth by this Court in *Murray v. Earle*, 405 F.3d 278, 283-84 (5th Cir. 2005) ("*Murray I*"). Two-year old Jayla Belton died in 1996. During the investigation into her death, Murray, then eleven-years old, became a suspect. While Murray was staying in foster care, Detective Reveles directed Detectives Pedraza and Eels, along with McGown, the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Mr. Earle retired as Travis County District Attorney at the conclusion of his last term in December of 2008.

supervisor of the Travis County Child Protective Services, to interview her. Before the interview, Reveles and Pedraza consulted with assistant district attorney Emmons on the proper method of interrogating Murray. The detectives questioned Murray at the foster home for approximately two hours, eventually eliciting a confession. Murray was arrested and prosecuted for Jayla's death. The confession was admitted at her trial, Murray was convicted of injury to a child, and she was sentenced to twenty-five years in the custody of the Texas Youth Commission. Finding that the confession was inadmissible under Texas law, the Texas Court of Appeals reversed Murray's conviction. *See In re L.M.*, 993 S.W.2d 276, 291 (Tex.App. – Austin 1999, pet. denied). The appellate court ruled that Murray had been in the custody of the State, and therefore law-enforcement authorities had violated Texas law by not taking her before a magistrate prior to the interrogation. *Id.*

In 2002, Murray, on behalf of herself and seven other family members, filed a lengthy civil complaint, alleging numerous violations of her federal and state constitutional and statutory rights, and claiming more than thirty million dollars in damages. Over the course of the litigation, a number of parties and claims have been dismissed, leaving for our consideration only Murray's five issues on appeal concerning seven remaining appellants.

### III. DISCUSSION

#### A. Fifth Amendment

Murray reasserts her Fifth Amendment claim "so that [she] will not be said to have waived her appeal rights on this issue[.]" However, the subject has already been addressed by a panel of this Court, and rehearing en banc and certiorari were denied. *See Murray v. Earle*, 546 U.S. 1033 (2005). It is well-settled that the "law of the case doctrine" bars a subsequent panel from reexamining an issue of fact or law that has been previously decided on appeal absent exceptional circumstances. *United States v. Lee*, 358 F.3d 315, 320 (5th

Cir. 2004) (citing *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)). The three exceptions to the doctrine apply if: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." *Matthews*, 312 F.3d at 657. Murray has failed to establish that any of these exceptions apply here. Accordingly, we decline her request to "revisit" the law of this case.

B.   Fourteenth Amendment

Murray next invites this Court to reconsider our 2008 order applying immunity for her Fourteenth Amendment claims. She does not argue that new facts have come to light or that there has been a change in controlling law; instead, she claims that the Court's application of qualified immunity was erroneous and unjust. Murray's argument raises nothing new that would overcome the law of the case doctrine as applied to our 2008 ruling. Accordingly, we decline to revisit that ruling.

C.   Sixth Amendment

Murray challenges the district court's dismissal of her Sixth Amendment claims against Blazey and the "Travis County District Attorney's Office."[2] The district court dismissed all such claims under Federal Rule of Civil Procedure 12(c).[3] First, the court dismissed Murray's official capacity claims because she had not pled that Travis County had a custom or policy of violating rights protected by the Sixth Amendment. She does not challenge that holding. *See*

---

[2] Of course, the "Travis County District Attorney's Office" is not a separate entity. Nor did Murray purport to sue it. She did sue Ronnie Earle, then the district attorney; the district attorney is the proper party to sue when contending a constitutional violation by a district attorney's office.

[3] Murray does not address the dismissal of her Sixth Amendment claims against defendants Earle, Emmons, Knee, Reveles, Johnson, Pedraza, Eells, McGown, Greer, Chapman, Morris, or the City of Austin. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (issues not argued in Appellant's brief are deemed abandoned).

*Yohey*, 985 F.2d at 225. Second, the court dismissed the Sixth Amendment claim against Blazey in her individual capacity, since no arrest or formal judicial proceedings had been initiated at the time of Murray's interrogation.

It is uncontested that the questioning of Murray took place at a stage of the case where no criminal or judicial proceedings had been instituted against her. For that reason, Murray's Sixth Amendment claim was correctly dismissed. It is well-settled that the Sixth Amendment right to counsel attaches only after adversarial judicial proceedings are commenced against a defendant and restrictions are imposed on her liberty. *See Rothgery v. Gillespie County, Tex.*, 128 S. Ct. 2578, 2583 (2008) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)) ("The Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms: 'it does not attach until a prosecution is commenced.'"); *see also Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (collecting cases); *Self v. Collins*, 973 F.2d 1198, 1206 (5th Cir. 1992) ("The Fifth Amendment right to counsel during custodial interrogation is distinct from that under the Sixth Amendment, which attaches at the commencement of formal judicial proceedings against an accused and applies regardless of whether the accused is in custody.").

On appeal, Murray contends that the Sixth Amendment right to counsel attached when the state filed a Petition in a Suit Affecting the Parent-Child Relationship ("SAPCR") in civil court to determine the guardianship of Murray and her siblings. However, she cites no authority for the proposition that the filing of a civil SAPCR triggers Sixth Amendment protections; instead, she raises only general precedent establishing that juveniles are entitled to counsel in criminal delinquency proceedings. *See In re Gault*, 387 U.S. 1, 13 (1967). Murray provides no support for her claim that "[t]he case law was well-settled in 1996, that the [rights implicated by the] filing of a civil family law proceeding, where the legal interests of a child are at issue, [are] the same as those that are

understood to exist in a juvenile delinquency proceeding." Murray cites no cases that suggest that an individual who is the subject of a civil guardianship hearing qualifies as an "accused" defendant "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby*, 406 U.S. at 689. Accordingly, the district court correctly dismissed the case under Federal Rule of Civil Procedure 12.

In addition, because there is no case law establishing a constitutional violation in a case like this one, it was not well-established that Murray had a Sixth Amendment right to counsel upon the filing of the SAPCR. A reasonable official would not have known that the failure to provide counsel in this instance might violate the Sixth Amendment. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Accordingly, qualified immunity would also apply to Murray's Sixth Amendment claims.

D.     The "Law of the Case Doctrine"

Murray suggests, without clear explanation, that the district court or this Court failed to respect the findings of the Texas appellate court contained in *In re L.M.* She seems concerned that the district court or the 2005 or 2008 panels did not adopt the state court's purported holding that her statements were unconstitutionally obtained as a result of custodial interrogation.[4] However, our 2005 opinion not only reflected the finding of the Texas court that Murray was in custody for purposes of the Texas statute, but also found a Fifth Amendment violation, because she was in custody and provided an involuntary statement. In her reply brief, Murray seems to suggest that the law of the case doctrine permits her to attach the Texas appellate ruling to avoid dismissal under a heightened pleading standard imposed by the district court. This point of error

---

[4] In reality, the state appellate court simply held that Murray was in custody for purposes of the Texas statute, and she should have been afforded a magistrate's warning prior to her statement. *In re L.M.*, 993 S.W.2d at 291.

was not made with sufficient clarity to permit this Court to address it. Accordingly, it provides no basis for relief. *See Yohey*, 985 F.2d at 225.

E.     Thirteenth and Fourteenth Amendments

Finally, Murray challenges the district court's dismissal of her claims against (former) District Attorney Ronnie Earle under the Thirteenth Amendment and the Equal Protection Clause of the Fourteenth Amendment.[5] She contends that Earle treated her differently than other, similarly-situated white children. However, the only conduct she cites to support her Thirteenth and Fourteenth Amendment claims was a statement purportedly made by Earle to a newspaper reporter in 1978 that he would recommend a lenient sentence for a white thirteen-year old who murdered his school teacher. Murray urges that such allegedly differential treatment was a violation of equal protection and violates section two of the Thirteenth Amendment as among the "badges and incidents of slavery."[6]

The Supreme Court has recognized that section two of the Thirteenth Amendment empowers Congress to define and legislatively abolish the "badges and incidents of slavery." *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971). It is not altogether clear that there is a private right of action under § 1983 for violations of the Thirteenth Amendment. *See Channer v. Hall*, 112 F.3d 214, 217 n.5 (5th Cir. 1997) ("suits attacking the 'badges and incidents of slavery' must be based on a statute enacted under § 2."). However, other circuits have

---

[5] Murray does not here challenge the dismissal of her equal protection claims against Blazey, Emmons, Knee, Reveles, Johnson, Pedraza, Eels, McGown, Greer, Chapman, Morris, or the City of Austin. Accordingly, this issue is waived. *Yohey*, 985 F.2d at 225.

[6] Murray's complaint itself broadly alleges that "Defendants would not have subjected them to the treatment they received if they were White citizens of the City of Austin, State of Texas. The treatment they received is an incident of slavery that was abolished by the Thirteenth Amendment." The district court summarily dismissed the Thirteenth Amendment as improperly pled, since "plaintiffs have not alleged Earle . . . subjected the plaintiffs to involuntary servitude (Thirteenth Amendment)."

concluded that state actors may be held responsible for Thirteenth Amendment violations under § 1983. *See, e.g., Sumpter v. Harper*, 683 F.2d 106, 108 (4th Cir. 1982).

Even assuming a private right of action under § 1983 for a Thirteenth Amendment violation, there is no indication that Earle had any personal role in Murray's interrogation or prosecution, nor that he was deliberately indifferent to Thirteenth Amendment violations by his subordinates. *See Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) ("Section 1983 does not create vicarious or *respondeat superior* liability."). The sole conduct alleged to constitute a "badge and incident of slavery" is his plan to urge a lenient sentence for one white juvenile in 1978 while apparently not doing so for Murray twenty years later. This claim, even if accepted as true, does not allege a violation of § 2 of the Thirteenth Amendment, nor would a reasonable official understand that such conduct violated any clearly-established constitutional right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Accordingly, Earle cannot be held liable here.

Similarly, Murray's Fourteenth Amendment equal protection claim against Earle was correctly dismissed.[7] Murray alleged no particular policy or custom that led to an equal protection violation. The sole instance cited on appeal to support an equal protection claim against Earle was the same "leniency" statement contained in the 1978 newspaper article. Earle's statement in favor of lenient treatment for one juvenile in 1978 simply does not support a § 1983 claim alleging a Fourteenth Amendment violation. *See, e.g., Coleman v.*

---

[7] Murray claimed in her complaint that, "The acts of the Defendants, individually and as conspirators, deprived LaCresha Murray particularly, and the other Plaintiffs generally, of life, liberty, and property without due process of law and denied them of the equal protection of the laws." She provided no other explanation of this allegation in her complaint or her Rule Seven statement.

*Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) ("In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race.").

The district court was correct that Murray failed to adequately plead her Fourteenth Amendment claim, since she pleaded no facts in support of the denial of the "equal protection of the laws" in her complaint, and provided no additional explanation in her Rule Seven statement. It is well-settled that a plaintiff invoking § 1983 must plead specific facts that, if proved, would overcome an official's immunity defense; "complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). Certainly, then, it would not be clear to a reasonable official that such conduct violated the Fourteenth Amendment. *See Anderson*, 483 U.S. at 640. Accordingly, the district court's dismissal of Murray's Thirteenth and Fourteenth Amendment claims was appropriate.

For the foregoing reasons, the judgment of the district court is AFFIRMED.